UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MANUEL LAMPON-PAZ, individually and on behalf of E.D.L.P., a minor**<br><br>**Plaintiff,**<br><br>v.<br><br>**DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF JUSTICE, SOCIAL SECURITY ADMINISTRATION, STATE OF NEW JERSEY**<br><br>**Defendants.** | Docket No.: 13-cv-5757-WJM-MF<br><br>**OPINION** |

## WILLIAM J. MARTINI, U.S.D.J.:

*Pro se* Plaintiff Manuel Lampon-Paz brings this claim on his own behalf and on behalf of his minor son E.D.L.P. against the U.S. Department of Homeland Security ("DHS"), the U.S. Department of Justice ("DOJ"), the Social Security Administration ("SSA"), and the State of New Jersey ("the State") (collectively, "Defendants"). Defendants have each filed motions to dismiss for failure to state a claim. Plaintiff has filed repeated motions to appoint *pro bono* counsel, change venue, amend the Complaint, and to order the government to cease and desist using mind-control technologies on him and to cease and desist performing medical procedures on him without his consent. For the reasons set forth below, the Defendants' motions are **GRANTED** and all of Plaintiff's motions are **DENIED**.

## I. BACKGROUND

This is Plaintiff's second lawsuit containing hazy allegations of a shadowy government conspiracy to injure him and his son with clandestine mind-control technologies. In *Lampon-Paz v. Dep't of Homeland Sec.*, 2:12-CV-04485 WJM,

1

2013 WL 2475859 (D.N.J. June 7, 2013) (*Lampon-Paz I*), Plaintiff, who is a former Federal Air Marshall, accused the same Defendants of retaliating against him for planning to report co-workers for their use of illegal steroids and for writing two memoranda in 2007 and 2008, which warned of a "Christmas 2009 attack." The retaliation consisted of the use of mind-control technologies on him. The court dismissed *Lampon-Paz I* because the allegations where insufficiently plausible. The Third Circuit affirmed. *Lampon-Paz I*, 532 F. App'x 125 (3d Cir. 2013).

## A. Plaintiff's Amended Complaint

On September 26, 2013, Plaintiff filed another Complaint ("*Lampon-Paz II*"). (ECF No. 1.) This was followed by an Amended Complaint filed on September 30, 2013. (ECF No. 3.) The factual allegations of the Amended Complaint are printed verbatim below:

> The defendants knowingly invaded my privacy with the intent to do harm. They have, by different means and without my permission, caused irrevocable harm to my marriage, to my relationship with my family, and with my close friends. They have used different means such as electronic devices; the use of electromagnetic waves, ultrasonic messaging, and brain mapping; to create false information and to relay personal information to both my family and neighbors as well as strangers who I have never met but have given me their condolence on my marriage coming to an end. My mother and several other people have told me about an affair that my wife had, which I did not know about, and did not want to know about, and the defendants have revealed that I had an affair, to my wife; without my consent, causing me and my wife [to] separate and will divorce as soon as she graduates from nursing school, as per an agreement between me and Catalina Lampon-Paz. The defendants have informed me; informally, by accident, or through electronic means; of an ongoing or past investigation by all parties.
>
> My son has been exposed to these electronic methods and is now in a one parent home and is experiencing difficulties at school and has endured retribution in the form of assaults.
>
> I have also had work papers stolen that were deemed classified and were being used by me as part of a whistleblower case.

The use of brain mapping to cause me to have an affair by enhancing my sexual mood and causing a romantic meeting between me and an old girlfriend.

The use of electronic means to cause several cardiac episodes while I was sleeping; use of electronic means to cause permanent injury to my lower back, knee and heart.

My son told me that he heard someone calling him an "idiot" in his ear in a soft tone and that it wasn't anyone he was with. This is indicative of ultrasonic messaging. I was at my mother's house in Paterson and he was playing in his cousin's house in Fair Lawn at the time. My son was 7 years old at the time and he is constantly having this done to him.

### B. Subsequent Filings

Plaintiff made an additional 15 filings subsequent to the filing of the Amended Complaint. These included motions to amend the Amended Complaint, motions to change venue, petitions for appointment of *pro bono* counsel, and orders to show cause requesting injunctive relief.

On November 11, 2013, December 12, 2013, and December 17, 2013, Plaintiff filed motions to change venue, stating that he intended to leave the state of New Jersey. (ECF Nos. 11, 28, 30.) On January 16, 2014, he informed the court that he would "probably be moving to Georgia." He provided an address and intended date of departure.

On November 12, 2013 and December 4, 2013, Plaintiff requested appointment of *pro bono* counsel. (ECF Nos. 12, 23.)

On November 21, 2013 and December 17, 2013, the Plaintiff filed two identical orders to show cause demanding that the Defendants cease "the use of brain mapping, hypnotism, electromagnetic waves, and ultrasonic messaging." (ECF Nos. 20, 31.)

On December 30, 2013, he filed a brief in support of the order to show cause. The substance is reproduced below:

> The invasion of privacy into my life has been substantial and detrimental to my marriage, personal life, and public image. It

is in the opinion of the plaintiff that this unwarranted and unwanted intrusion was done purposely by the defendants for the reasons of discrediting, harassing, and to cause harm; both physical and mental.

I became aware that these intrusions involve family members, people that I barely knew from Bergen Community College (where I attended school), neighbors, law enforcement personnel and elected officials. I have also found out that the use of highly sophisticated technology was being used for brain mapping; that a tone emitted from an electronic device and received in my left ear was being used to put me in a hypnotic trance at night; the employment of electromagnetic waves during this process; the use of these methods, brain mapping and electromagnetic waves emitted from an electronic device can cause mood changes in people, from anger to extremely heightened sexual mood. I have also found about the use of ultrasonic messaging, which is the use of an electronic device to send messages that are just above hearing threshold.

I have been led to believe that this is:

a. Some kind of medical procedure for either PTSD or anger management; two things that I did **not** suffer from prior to this beginning;
b. Investigation by law enforcement personnel, which would be an ongoing situation since 2005 and has surpassed any usefulness and would now only serve to harass and slander;
c. Retaliation for informing on different political and law enforcement personnel;
d. To garner information that I know about other people to be used against them, which would be absurd since it invades my privacy and I have not been informed about anyone seeking information.

In a motion that is set to be heard on January 21st of 2014, I have asked the defendants to show cause as to:

a. why these methods were being employed,

4

      b. and under what authority or legal pretense,
      c. and why was my family, people that I have no association with, people that are in danger of being charged with a crime (Jeff Turk), my neighbors and anyone were utilized;
      d. and why different events were revealed to my wife that have caused our ultimate dissolution of our marriage.

Plaintiff filed another order to show cause on January 7, 2014 requesting an injunction ordering the Defendants not to "perform any medical treatment of any sort without [Plaintiff's] explicit consent." (ECF No. 36.)

Plaintiff filed 6 papers seeking to amend the Complaint. On November 8, 2013, Plaintiff requested that the Complaint be amended to add New Jersey Governor Christopher Christie and John Doe Officers for the State of New Jersey (ECF No. 10.) He alleged the Christie:

> Did use his power as Governor of New Jersey and prior position as United States Attorney for the District of New Jersey to invade my privacy and was directly or indirectly responsible for intentional infliction of emotional distress and the Assault and Battery that occurred. The reason was to hide and or find any embarrassing or possibly illegal activity about the defendants that he could try and use so they would not disclose illegal activity that he may have done or overseen while in his position of authority.

In the same motion, he requested the addition of John Doe Officers for the State of New Jersey based upon interactions he had with FBI agents at the FBI office in Newark.

On November 22, 2013, Plaintiff filed a motion to amend the Complaint to name the FBI, FBI Office SAC Aaron T. Ford, and FBI Director James Comey. (ECF No. 21.) The motion stated:

> On or about May of 2009 I walked into the Federal Bureau of Investigation to report several incidents and to give them steroids that I received from Y-Age clinic and to hand them a memo titled "Possible Security Risk." The agent in charge that day, a 5'10" 185 pounds, blonde haired agent took my complaint but refused to take me into the interview room. The agent asked if the shipping label was still on the package and I showed him the package with the shipping label still

5

attached. I asked him if he wanted it and he stated "No, I'll call you later for it." I gave them my cell number and the agent took the memo. That agent would later call me on my parents' phone in Paterson, where I was staying at the time. Also the refusal of the FBI to investigate an assault that occurred to me, my wife and my son while I was still employed as a Federal Air Marshal and the failure to investigate a complaint that I had my computer hacked and that I had classified information stolen and had e-mails stolen.

On December 12, 2013, Plaintiff filed another brief in support of his motion to add the FBI as a Defendant. (ECF No. 35.) The substance of the brief contains no mention of the FBI. It does make reference to his knowledge of the "defendants' use of steroids from Y Age Clinic and his memos that "pointed directly to the attempted Christmas bombing of 2009."

Plaintiff also filed 2 motions to amend the Amended Complaint to add additional accusations. The first motion, filed on December 17, 2013, makes three accusations. (ECF No. 29.) First, it accuses the U.S. Attorneys' Office of revealing personal medical records during *Lampon-Paz I* to unnamed parties. Second, it claims the State of New Jersey unlawfully obtained private medical records from "Dr. Kim" and revealed them to employees at the Labor and Workforce Division of the State of New Jersey. Third, it states, "The Federal Bureau of Investigation failed to investigate crimes that I personally reported to the Newark Field Office concerning acts of violence, espionage and privacy (the taking of my memo and forwarding it to another individual) against me and my family because of revealing Y Age clinic as a steroid dispensary and therefore failed to give me and my family equal protection under the law."

The second motion to amend the Amended Complaint, filed on December 18, 2013, requested the addition of a cause of action for assault. (ECF No. 32.) Plaintiff experienced pains in his head and attributes this to "electronic means" used by the Defendants against him. He says the pains sent him to a hospital where a doctor told him that "they would not find anything prior to taking a CT scan." He claims that this doctor's statement is evidence that the Defendants knew he was going to the hospital and influenced the medical staff.

Plaintiff submitted a paper and an audio recording regarding an incident where his son fell down and hit his head at the Jersey Gardens Mall. (ECF

6

No. 13.) Plaintiff claims the boy disobeyed him when Plaintiff told the boy it was time to leave. The boy ran away from his father in order to avoid leaving the mall. As he ran away, he fell, hit his head, and became unconscious temporarily. Plaintiff took his son to the hospital. At the hospital, the staff observed the boy for ten minutes and had him follow the doctor's finger with his eyes. No scans or x-rays were performed. Plaintiff concludes the narrative by saying, "There is no doubt that ultrasonic messaging was used that day, on both me, and, more importantly, my son."

## II.   LEGAL STANDARDS

### A. Amendment of the Complaint

Pursuant to Federal Rule of Civil Procedure 15, the court should grant leave to amend a pleading freely. In this case, the court will take all of Plaintiff's filings into account.

### B. Venue Transfer

Pursuant to 28 U.S.C. § 1404, a court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum. *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (*citing Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)). The court has broad discretion in making determinations under Section 1404(a), and convenience and fairness are considered on a case-by-case basis. *Id.* (*citing Commodity Futures Trading Comm'n v. Perkins,* No. 06-4674, 2007 WL 2122029, at *3 (D.N.J. July 18, 2007)).

Plaintiff has asked to change venue because he seeks a more affordable state in which to reside. He provided the court with a new address in a different jurisdiction and intended date of departure, which is beyond the date of this opinion. Since the Plaintiff is still a resident of New Jersey, the acts in question all took place in New Jersey, and the State of New Jersey is one of the parties, the court is denying the motion to transfer venue.

### C. Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Moreover, where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

### D. Injunctive Relief

Pursuant to the Third Circuit's test for preliminary injunctions, this court is to issue such an injunction only if Plaintiff produces evidence sufficient to convince the court that *each* of four factors favor preliminary relief: (1) the likelihood that the plaintiff will prevail on the merits at the final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Score Bd., Inc. v. Upper Deck Co.*, 959 F. Supp. 234, 238 (D.N.J. 1997) (*citing New Jersey Hosp. Assoc. v. Waldman,* 73 F.3d 509 (3d Cir. 1995)).

### E. *Pro Bono* Counsel

Section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." District courts have "broad discretion" to decide whether requesting counsel is appropriate, may request counsel at any point in the litigation, and may do so *sua sponte*. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (*citing Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As an initial matter, the court must first determine if the party seeking counsel has an underlying case with arguable merit in fact and law. *Id*. at 498-99. Once the claim has passed that threshold, the court then considers the following list of criteria to assess whether requesting counsel would be appropriate: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and (6) whether the case will require testimony from expert witnesses. *Id*. at 499. The list is non-exhaustive, and the court may consider other facts or factors it determines are important or helpful. *Ibid.*

## III. DISCUSSION

### A. Subject Matter Jurisdiction

"The court has an ongoing duty to determine whether subject-matter jurisdiction is proper upon its own initiative or the suggestion of the parties." *Dicesare v. Office of Children, Youth & Families*, CIV.A. 11-985, 2012 WL 2872811 (W.D. Pa. July 12, 2012) (*citing* Fed. R. Civ. P 12(h)). Subject matter jurisdiction over this matter is doubtful. In other jurisdictions, courts have been faced with similar complaints about government conspiracies involving mind-reading technology, covert medical procedures done without plaintiff's consent, and clandestine manipulation of third parties. In the District of Columbia, the courts dismiss these claims for lack of subject matter jurisdiction because federal courts are without power to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Riles v. Geithner*, 693 F. Supp. 2d 1, 3 (D.D.C. 2009); *Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175 (D.D.C. 2011). The District Court for the District of Columbia stated that claims of "bizarre conspiracy theories . . . fantastic government manipulations of the mind, [or] any other sort of supernatural intervention" were appropriate for dismissal on these grounds. *Riles v. Geithner*,

693 F.Supp.2d at 3. To meet the standard for dismissal on these grounds, the claims in question must be "flimsier than doubtful or questionable – they must be essentially fictitious." *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994).

Plaintiff concedes that his claims about abusive use of technology are "almost impossible to prove." (Opposition Brief at 2.) He describes a theory whereby thoughts he has are the result of the government sending messages via an "electronic device that is not audible to its intended target but is just above the threshold of conscious hearing." (*Id.*) Even though the conscious mind does not hear the alleged messages, "the unconscious mind takes notice of the message being sent and will act on it." (*Id.*)

The Third Circuit has not taken a stance on whether claims such as the Plaintiff's would fall within this category of insubstantial claims over which the district courts have no jurisdiction. Even if the court had jurisdiction to entertain Plaintiff's claim, the Complaint would still have to be dismissed on a variety of other procedural and substantive grounds.

### B. State Sovereign Immunity

The Eleventh Amendment's state sovereign immunity has long been recognized to bar suits by citizens or foreign states against non-consenting states brought in either state or federal court. *Petsinger v. Pa. Dep't of Transp.*, 211 F. Supp. 2d 610, 612 (E.D. Pa. 2002). For this reason, the court must dismiss the State of New Jersey from the Complaint.

### C. Res Judicata

Defendants argue that this case should be barred by the doctrine of res judicata. Res judicata, or claim preclusion, is a court-created rule that is designed to prevent one who has been given the opportunity to fully present his case in a court from later renewing the litigation. *Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985). "In order to raise successfully the defense of res judicata, the party asserting the defense must demonstrate that (1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies; and (3) the subsequent suit is based on the same causes of action." *Id.* at 690.

Res judicata properly bars this claim. The allegations contained in the Plaintiff's Amended Complaint and subsequent filings are essentially the same as those presented in *Lampon-Paz I*. In both *Lampon-Paz I* and *Lampon-Paz II*, Plaintiff alleges that Defendants have been covertly harming him and his son through

10

invisible electronic means in retaliation for reporting co-workers' use of steroids and writing memoranda about possible terrorist attacks. *Lampon-Paz I* was brought against the same Defendants, or their privies, and *Lampon-Paz I* was decided on the merits.

### D. Failure to State a Claim

Even if this case were not barred on procedural grounds, it would still have to be dismissed because the facts alleged do not state a plausible claim against any of the Defendants. While the court accepts that Plaintiff's allegations of suffering as true, the facts alleged do not warrant a plausible inference that Defendants are responsible for this distress.

Nowhere in the Amended Complaint or his additional filings does the Plaintiff make any substantive reference to the named federal Defendants: the Department of Homeland Security, the Department of Justice, or the Social Security Administration.

The allegations against the State of New Jersey are extremely vague. In a bizarre conspiracy claim such as this, a high amount of specificity with regard to each Defendant would be necessary to push the claim from possible to plausible. *Iqbal*, 556 U.S. at 662 (*quoting Twombly*, 550 U.S. at 557) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

Even if the court permitted amendment of the Complaint to add Christopher Christie and John Doe state employees, this second Amended Complaint would still not state a claim. The allegations against Christie are so vague as to be implausible, and there is no mention of any act of any unnamed state employee. Plaintiff's motion to add John Doe state employees talked about FBI workers, who are not state employees.

With respect to Plaintiff's request to add the FBI Office SAC Aaron T. Ford and Director of the FBI James Cowey, again, the petition contains no substantive accusations against these people specifically.

With respect to the request to add the FBI, the actions attributed to the FBI or its agents do not plausibly lead to an inference that the FBI harmed Plaintiff with electronic devices. Plaintiff mentions going to the FBI offices several times where officers made unremarkable comments to him or failed to make certain investigations. This does not lead to an inference that the FBI is covertly harming him via electronic means.

In general, Plaintiff's accusations that the government is reading his thoughts or putting thoughts in his head is not plausible. In order to state a claim, Plaintiff must allege facts that make his claims not just possible, but probable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff alleges that he has had various experiences that troubled him – his son disobeying him, a desire to cheat on his wife, body pains, unhelpful government functionaries. None of his allegations make it seem likely that these normal human experiences were manifested by government conspiracy or use of advanced technology. Common sense dictates that the more likely explanation is that these things occurred naturally, in the absence of a government conspiracy. Where there is a more likely explanation for an event than the one claimed by the plaintiff, the plaintiff has failed to state a claim. *Id.* at 681.

Given that the Plaintiff's claims are substantively implausible, and the matter is procedurally barred, it would be futile to appoint *pro bono* counsel, grant injunctive relief, or permit further amendment of the Amended Complaint.

### IV.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are **GRANTED**. All of Plaintiff's motions are **DENIED**. Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 23, 2014**